Denman et al., Appellants, *v.* Rhodes.

Argued September 17, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF-MAN, JJ. (FLOOD, J., absent).

*G. Clinton Fogwell, Jr.,* with him *Melva L. Mueller, John W. Wellman,* and *Reilly and Fogwell,* for appellants.

*James E. O'Neill, Jr.,* with him *Rogers & O'Neill,* for appellee.

OPINION BY WRIGHT, J., November 10, 1965:

Late Sunday evening April 22, 1961, on Route 202 in Chester County, there was a collision between a Ford automobile owned and operated by Albert Rhodes and a Plymouth automobile owned and operated by Augustus Denman. A trespass action was instituted against Rhodes by Denman and the passengers in the Denman automobile. The jury returned a verdict for the defendant. The plaintiffs filed a motion for a new trial on the ground that the verdict was against the weight of the evidence. From an order of the lower court dismissing this motion, plaintiffs appealed to the Supreme Court. This appeal was quashed and the record was remanded "without prejudice to the right to enter a judgment on the verdict".[1] Judgment on the verdict was thereafter entered, and this appeal to the Superior Court followed.

Denman, proceeding south, had as passengers his wife, Natalie, his son, Richard, then aged 18, and his wife's mother, Mrs. Natalie Thorpe. They were on their way home to Chester after attending a band concert in Coatesville, in which concert the son had participated. Rhodes, proceeding north, was on his way home to West Chester after attending a church meeting in Wilmington, Delaware. It was drizzling rain and misty, "a miserable night". For a short distance south of West Chester Route 202 is a two-lane concrete highway. It then becomes a four-lane highway. Rhodes admitted that he was familiar with the road. The best description of the collision in the record appears in the testimony of the investigating police officer, David E. Ross, a witness called by the defend-

---

[1] *Denmon v. Rhodes,* 416 Pa. 568, 207 A. 2d 860. The correct spelling is Denman.

ant. Ross testified on cross-examination that Rhodes "stated that he was traveling north and all of a sudden the road narrows down and he struck what he thought was a pothole; lost control of his car, veered across and hit a car traveling southbound". Mrs. Thorpe testified that, after the collision, Rhodes said "that he was terribly sorry but it was his fault".

It was undisputed that the collision occurred on Denman's proper side of the highway, and that he was not guilty of any contributory negligence. Where it appears that the driver of an automobile permits his car to deflect from its course and to cross the highway into the wrong traffic lane, an inference of negligence arises: *Campbell v. Fiorot,* 411 Pa. 157, 191 A. 2d 657. The only explanation offered by Rhodes was that the operator of a vehicle preceding the Denman automobile "did not dim his lights and I pulled off the edge of the road and I fell into a rut . . . and I pulled on my steering wheel to come up out of that rut and when I did it started to slide sideways".

Rhodes argues that we must view the evidence in the light most favorable to him, citing *Bailey v. Gibbs,* 414 Pa. 238, 199 A. 2d 460. That would be correct if we were considering an appeal from the refusal of judgment n.o.v. However, in passing upon the question whether a verdict is against the weight of the evidence, the court is not required to consider the evidence in the light most favorable to the verdict winner: *Wolansky v. Lawson,* 389 Pa. 477, 133 A. 2d 843. It is of course true "that the assaying of the credibility of witnesses and the resolving of conflicts in their testimony are for the jury. But it is equally true that the trial judge may not hide behind the jury's verdict; he has a duty to grant a new trial when he is convinced that the judicial process has resulted in the working of an injustice upon any of the parties": *Kiser v. Schlosser,* 389 Pa. 131, 132 A. 2d 344.

The operator of an automobile on a public highway is under a duty to have the vehicle under constant control, which means that he will be able to stop it before doing injury to any person or property in any situation reasonably likely to occur: *Sollinger v. Himchak,* 402 Pa. 232, 166 A. 2d 531. On the record in the instant case it is difficult to understand how the jury arrived at a verdict for the defendant. The overwhelming weight of the evidence warranted a verdict for the plaintiffs. Cf. *Byers v. Vargo,* 389 Pa. 365, 133 A. 2d 163; *Pascale v. Simmons,* 406 Pa. 476, 178 A. 2d 549; *Pupich v. Bock,* 202 Pa. Superior Ct. 382, 195 A. 2d 809. Where a verdict is so greatly against the weight of the evidence as to be a shock to the judicial conscience, a court has not only the right but the duty to disagree with the jury and to overturn its verdict no matter how many trials need be had in the interest of justice: *Lupi v. Keenan,* 396 Pa. 6, 151 A. 2d 447.

Judgment reversed and a new trial granted.